1

**Parisa Fishback, Esq. (SBN 255218)**

2
**FISHBACK LAW GROUP**
**160 N. Riverview Drive, Suite 200**

3
**Anaheim Hills, CA 92808**
**Tel. (714) 820-4558**

4
**Fax. (714) 820-4630**
**pfishback@fishbacklawgroup.com**

5

6
Attorney for Debtors Movants
Imelda Balanga Cadiz and Fernando P. Cadiz

7
**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

8

9
In re:                                                  )          CASE NO.: 8:09-bk-20962-RK
                                                        )          CHAPTER 13
IMELDA BALANGA CADIZ                                     )

10                                                       )
                                                        )
11
and                                                     )          **NOTICE OF MOTION AND**
                                                        )          **MOTION TO STRIP-OFF LIEN OF**
12                                                       )          **SELECT PORTFOLIO SERVICING,**
FERNANDO P. CADIZ                                        )          **INC; POINTS AND AUTHORITIES**
                                                        )          **IN SUPPORT; DECLARATIONS OF**
13
                              Debtors                   )          **IMELDA BALANGA CADIZ AND**
                                                        )          **FERNANDO P. CADIZ IN SUPPORT**
14
IMELDA BALANGA CADIZ                                    )          **THEREOF**
                                                        )
15
and                                                     )          Pursuant to §1322(b)(2) and §506(a)
                                                        )
16
FERNANDO P. CADIZ                                        )
                                                        )
17
                              Movants                   )          DATE: January 13, 2009
                                                        )          TIME:  2:30 P.M.
18
v.                                                      )          LOCATION: 411  W.  Fourth  Street,
                                                        )          Santa Ana, CA
19
SELECT PORTFOLIO SERVICING, INC                          )          CTRM: 5D
                                                        )
20
                              Respondent                )
                                                        )
21                                                       )

22

23
**TO THE HONORABLE ROBERT N. KWAN, AMRANE COHEN, THE CHAPTER 13**

24
**TRUSTEE, AND RESPONDENT**:

25
        IMELDA BALANGA CADIZ and FERNANDO P. CADIZ (hereinafter, "Debtors")

26
hereby submit this MOTION TO STRIP-OFF LIEN OF SELECT PORTFOLIO, INC., filed in

27
the within case as follows:

28

# I.
## STATEMENT OF FACTS

1

2  On October 12, 2009, Debtors filed the instant bankruptcy case, Case No. 8:09-bk-20962-

3  RK , to save the Debtors' real property located at 9092 Marchand Avenue, Garden Grove,

4  California 92841 ("The Property").

5  The Property is worth no more than $330,000.00, based on a licensed California

6  Appraiser's Uniform Residential Appraisal Report reflecting the current value of the Property.

7  (Attached hereto and incorporated herein as Exhibit "D" is a copy of the Appraisal, to that effect,

8  as well as the Declaration of the Appraiser, Pete L. Perez, attached hereto and incorporated

9  herein as Exhibit "E").

10  The First Deed of Trust is currently held by LITTON LOAN SERVICING, (hereinafter

11  "Litton"). (Attached hereto and incorporated as Exhibit "B" is a true and correct copy of the

12  Deed of Trust which documents the instrument recording number for the First Deed of Trust as

13  2006000320899, evidencing that it was recorded first in time). The amount owing on the First

14  Deed of Trust is at least $533,938.01, pursuant to the most recent mortgage statement provided

15  to the Debtors by Litton, as well as the Declaration of Debtors Imelda Balanga Cadiz and

16  Fernando P. Cadiz. (Attached hereto and incorporated herein as Exhibit "A" is the Declaration of

17  Debtors. Attached as Exhibit "1" to the Declaration of Debtors is a true and correct copy of the

18  October Mortgage Statement). A Proof of Claim has not been filed by Litton in this case.

19  (Attached as Exhibit "3" to the Declaration of Debtors is a true and correct copy of the Claims

20  Register in the instant case).

21  The Second Deed of Trust is currently held by Select Portfolio Servicing, Inc.,

22  (hereinafter "SPS"). (Attached hereto and incorporated herein as Exhibit "C" is a true and correct copy

23  of the Deed of Trust which documents the instrument recording number for the Second Deed of

24  Trust as 2006000320900, evidencing that it was recorded subsequent to the First Deed of Trust).

25  The amount owing on the Second Trust Deed is $133,767.62, pursuant to the most recent

26  mortgage statement provided to the Debtors by SPS, as well as the Declaration of Debtors,

27  Imelda Balanga Cadiz and Fernando P. Cadiz. (See Exhibit "A". Attached as Exhibit "2" to the

28  Declaration of Debtors is a true and correct copy of the September Mortgage Statement). A Proof

of Claim has not been filed by SPS, in this case. (See Exhibit "3").

## II.
## ARGUMENT

### A.    A SECURED CLAIM IS SECURED ONLY TO THE EXTENT OF THE VALUE OF THE COLLATERAL, AND UNALLOWED SECURED CLAIMS ARE VOID.

11 U.S.C. Section 506(a) states that:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to a setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim.

11 U.S.C. Section 506(d) states that:

> To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is **void**. (emphasis added)

### B.    THE DEBTORS MAY REQUEST AND THE COURT MAY ENTER AN ORDER THAT VALUES COLLATERAL WHICH IS PROPERTY OF THE BANKRUPTCY ESTATE AND WHICH SECURES A CLAIM OF A CREDITOR AGAINST THE DEBTORS.

Bankruptcy Rule 3012 states that the court may determine the value of a claim secured by a lien on property in which the estate has an interest on motion of any party and after a noticed hearing.

### C.    THE LIEN OF SELECT PORTFOLIO SERVICING INC., SHOULD BE EXTINGUISHED AND RECONVEYED SINCE THE PROPERTY IS WORTH $330,000.00, AND THE FIRST DEED OF TRUST IS AT LEAST $533,938.01 THUS THE LIEN IS AVOIDABLE AND SHOULD BE REMOVED.

The prevailing case law in our jurisdiction holds that Chapter 13 debtors are entitled to "strip off" totally unsecured junior mortgages on a principal residence where the claims of the junior lienholders are unsecured given that the value of the principal residence is less than the balance owed on the first mortgage. In re Lam, 211 B.R. 36 (9th Cir. B.A.P. 1997). In Lam, the court held a Debtor's completely unsecured junior mortgage could be stripped off his principal residence, holding that:

> The Nobleman decision holding that section 1322(b)(2) bars a chapter 13 plan from modifying the rights of holders of claims, secured only by the debtor's principal residence, does not apply to holders of totally unsecured claims. The extension of the protections of section 1322(b) to wholly unsecured lien holders is contrary to the provisions of the bankruptcy code allowing dischargeability of unsecured claims.

1  In re Lam followed the earlier decision of In re Geyer, 203 B.R. 726 (S.D. Cal 1996). In Geyer, the court

2  sustained the Debtor's motion to avoid a lien brought under Bankruptcy Code Section 506(d), and held

3  at a Chapter 13 debtor may strip off a lien on his or her primary residence when the lienholder's interest

4  is totally unsecured, stating that:

5  *... the term 'secured claim' as used in section 1322(b)(2) has the same meaning as the term "secured claim" in section 506(a). Unless*

6  *there is some equity to which the creditor's lien attaches, there is no allowed secured claim and no entitlement to the protections against*

7  *modification contained in section 1322(b)(2). A chapter 13 debtor may 'strip-off' a lien on his or her primary residence under the plan or under*

8  *section 506(d) when the lienholder's interest is totally unsecured.*

9  In re Geyer, 203 B.R. 726, 729 (S.D. Cal. 1996).

10  Indeed, The Ninth Circuit allows this when there is no equity to which the lien of the junior mortgage

11  will attach. In re Zimmer, 313 F.3d 1220 (C.A.9 (Cal.), 2002). Thus if there is no equity to which a

12  junior lien attaches, that debt becomes an unsecured claim and can be removed as a lien on the property

13  on entry of the chapter 13 discharge. It need not be paid the same percent as other unsecured creditors.

14  Courts throughout the country agree that the decision of the United States Supreme Court in Nobleman v.

15  American Savings Bank, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed 228 (June 1, 1993) which prohibits a

16  creditor's claim on residential real estate from being bifurcated into secured and unsecured portions and

17  the creditor's rights under the unsecured portions from being modified does not prohibit a Chapter 13

18  Debtor from stripping off a totally unsecured mortgage on a principal residence. In re Lam, supra; In re

19  Geyer, 203 B.R. 726; Woodhouse v. Woodhouse, 172 B.R. 1 (D. Rhode Island, 1984); In re Sette, 164

20  B.R. 453, 456(Bankr. E.D.N.Y. 1994); In re Williams, 161 B.R. 27 (Bankr. E.D.Ky. 1993); In re

21  Moncrief, 163 B.R. 492 (Bankr. E.D.Ky. 1993) In re Hornes, 160 B.R. 709 (Bankr. D. Conn. 1993);

22  In re Plouffe, 157 B.R. 198 (Bankr. D. Conn. 1993) (a literal reading of Section 1322(b)(2) does exclude

23  a mortgagee whose secured interest is zero).

24  In the case at bar, the Property to be retained in the Chapter 13 Plan is Debtors' property. The value of

25  the Property is $330,000.00, yet the value of the First Deed of Trust is at least $533,938.01. Thus, the

26  secured interest of the Second Deed of Trust is zero since there is absolutely no equity to which the

27  Second Deed of Trust can attach. Therefore, the Second Deed of Trust, like that found *In Re Lam* should

28  be extinguished, treated as unsecured for purposes of the instant Chapter 13 proceeding and discharged

1 | upon the completion of the plan terms.

2 | **D.   IN RE DEWSNUP IS DISTINGUISHED FROM LIEN STRIPPING IN THE INSTANT CASE**

3 |

4 | The Chapter 7 case of <u>Dewsnup v. Timm</u>, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992)

5 | has no application to this Chapter 13 case.  The relevant cases are the Chapter 13 cases which

6 | Movant/Debtor cites above which turn on the many courts' interpretations of Section 1322(b)(2) of the

7 | Bankruptcy Code to mean that under Section 1322(b)(2) a Chapter 13 plan may modify the rights of

8 | secured claims, other than a claim secured only by a security interest in real property that is the debtor's

9 | principal residence, and that this section, in light of Section 506(a), does not preclude modification by a

10 | Chapter 13 plan of the rights of holders of unsecured claims; to wit, junior mortgages which are

11 | completely unsecured.

12 | To this end, Justice Scalia, in his dissent in <u>Dewsnup</u>, points out the difference between lien stripping

13 | in that Chapter 7 case and lien stripping in a Chapter 13 case when he states that,

> Respondents assume, for example, that a debtor in a chapter 13 cannot
> strip down a mortgage placed on the debtor's home,; but that assumption
> may beg the very question the Court answers today.  True, Section
> 1322(b)(2) provides that Chapter 13 filers may not "modify the rights of
> secured claims", that are "secured only by a security interest in real
> property that is the debtor's principal residence.  But this can be and has
> been read, in light of Section 506(a), to prohibit modification of the
> mortgagee's rights only with respect to the operation of his claim that is
> deemed secured under the Code.  <u>see</u>, e.g., <u>In re Hart</u> 923 F.2d 1410,
> 1415 (CA 10 1991); <u>Wilson v. Commonwealth Mortgage Corp.</u>, 895 F.2d
> 123, 127 (CA3 1990).

20 | <u>Dewsnup</u>, 502 U.S. 410, 428, 112 S.Ct. 773, 784.

21 | In <u>Dever v. Internal Revenue Service</u>, 164 B.R. 132 (C.D. Cal. 1994), Judge Fenning held

22 | that in spite of <u>Dewsnup</u>, stripping an IRS lien on a principal residence is permissible in a

23 | Chapter 11 case.  The Court noted that while under <u>Dewsnup</u>, Chapter 7 debtors cannot use

24 | Section 506 to strip down liens on an undersecured claim, the Supreme Court specifically

25 | reserved the question as to the applicability of its ruling in <u>Dewsnup</u> to cases under the

26 | reorganization chapters.  164 B.R. 132, 133.  In <u>Dever</u>, the Court discussed the issue of lien

27 | stripping in Chapter 13 cases and cited the 10th Circuit case of <u>In re Hart</u> wherein the Court

28 | reasoned:

> The dispositive issue in this case is whether Eastland's undersecured loan may be bifurcated into two claims by applying general principles of Section 506(a) to the mortgage and then protecting only the secured claim by provision of Section 1322(b). We believe it can. 923 F.2d 1410, 1413 (10th Cir. 1991).

After citing In re Hart, in Dever the Court went on to state that:

> If Section 506 does not permit debtors to bifurcate undersecured claims and strip down liens to their collateral value, then all secured creditors would be freed of any concern that debtors could reduce the amount of their liens while retaining property. If Congress did not intend to allow lien stripping in general in Chapter 13 cases, then why would it bother to draft the exclusionary language of Section 1322. As Justice Stevens' concurring opinion in Nobleman emphasizes, the legislative history of Section 1322(b)(2) reflects Congressional desire to provide special protections to residential lenders. (citations omitted) The threat must be lien stripping, because no other threat is evident.

Dever v. Internal Revenue Service, 164 B.R. at 141.

### III.
### CONCLUSION

Pursuant to the foregoing, the Second Deed of trust of Select Portfolio Servicing, Inc., is wholly unsecured as evidenced by the Appraisal and Points and Authorities herein. Accordingly, the Debtors respectfully request that the Second Deed of Trust of Select Portfolio Servicing, Inc., be ordered extinguished, to deem the Second as an unsecured claim during the life of the Debtors' Chapter 13 Plan, that upon the completion of all Plan payments and entry of discharge in this case pursuant to 11 U.S.C. §1328, the second lien of Select Portfolio Servicing, Inc., will be void and will not constitute an encumbrance on the Property described within this motion, that upon completion of all Plan payments and upon entry of discharge in this case, Select Portfolio Servicing, Inc., is ordered to expeditiously reconvey the Second Deed of Trust and otherwise take such steps as are required to clear title, free of said lien, as to the Property as described herein. The lien shall remain valid if the case is dismissed or converted to another chapter.

Dated: December 4, 2009

By: _Parisa Fishabck_
Parisa Fishabck
Attorney for the Debtors
**IMELDA BALANGA CADIZ**
**FERNANDO P. CADIZ**